My next case is ParkerVision v. Intel, 2022-2173. Mr. Charco, you may proceed. Good morning, Your Honors. My name is Jason Charco. I represent ParkerVision and I want to address three issues today. Issue number one is Downey Sedra does not disclose a switch and there is some very important stuff that I would like to point the court to that I think would be helpful to its decision. Number two, the PTAB's definition of switch is wrong and there's additional information that I would like to point the court to, not additional, but focus the court on certain issues. And we also believe, as we said in our brief, there's an Administrative Procedures Act violation, our inability to respond to certain issues that were raised for the first time in petitioner's reply. Mr. Kessler, it seems to me that an elementary factor in your argument with respect to the switch, it just seems to me that it contravenes the understanding of what a switch is in the industry. I mean, the switch is an electronic device for opening and closing a circuit. And your arguments appear to want to lead us to reach some other type of definition. I would like to address that, Your Honor. Do you think, am I correct, it's an electric device for opening and closing a circuit? That's a switch. I think that's part of it, Your Honor. So when you look at the patent, right, as with any patent, you have to look at the... What do you mean part? That is the definition of a switch. So when you're looking at the definition of a switch, you have to look at how it's talked about in the patent. Correct? Like we have to look at what the patent talks about a switch... I understand that for the purposes of this case, but generally speaking, a switch is an electric device for opening and closing... Right, like a wall switch or something you open and close. Yeah, I would agree that in the general context, but bringing it back to where the patent stands, right? So we look at what's disclosed in the patent, I think that's relevant to look at and all the embodiment, Your Honor. So if I could hit that issue first, our position is that there is, with regards to the patent, there is no lexicography. So the PTAB relied on one sentence in a section called the control of switch. It's not a definition of the switch. It doesn't say what the switch is, okay? So it doesn't say the switch means this, the switch refers to this, the switch is this. There was no clear intent to define in that section. That's the only sentence, that one sentence in column... I forget what it is, but that one sentence that the PTAB relied upon. And in that one sentence, if that is not lexicography, which we don't believe it is, then you have to look at the rest of the patent. And in the context of the rest of the patent, this is just an embodiment. This is how the patent works fundamentally. Every diagram, every disclosure talks about what a switch is, and everything talks about having an independent control input. Every single diagram. And that's just because the patent doesn't work, the technology doesn't work without the ability to control the opening and closing of a switch. And you won't get a system that operates. What will happen if you don't have... The whole point of the system is to open and close a switch and basically up-convert a signal. And you need that control signal to do it, and it has to be independent. You have to be able to independently control that. So, and then the reason why it's not lexicography, Your Honors, is because if you look at the discussion of... So this is in column... Column 7 of the patent, Your Honors. And you look down to lines 57, that's where the PTAB relied upon. And again, not a definition of a switch. The last line is what they focus on. It says, if the switch is controlled by an electronic signal, it is typically a different signal than the signals connected to either terminal of the switch. And based on... Why don't you... Let's look at claim 1. Sure. And point to any elements of claim 1 regarding that the express... That there's an express requirement for independent control on the operation of a switch. Independent control. Well, there's independent control for operation of the switch. There's a discussion about control signals, but control signals are different than independent control inputs. Inputs and signals, like the back of my TV, has inputs to it, right? And I have connections into that TV, and signals can go into that. But an input is like a port. A signal is something else. Show me claim 1. Where is that? Well, it's... Your Honor, it talks about a switch. That's our belief that that is where that element lies, the independent control input. So... And it talks about a signal, a control signal. Well, a signal can... I'm referring to an express requirement for the independent control input for each switch. The... It's... They're in the... The words independent control input is not in the claim, but that doesn't mean that a switch doesn't include that concept, especially where it talks about a control signal. A control signal has to come through something. Did you have expert testimony that this wouldn't work without the independent control? You've said that this morning, but that's lawyer argument. Did you have expert testimony to that effect? Um... I'm not sure. I don't recall, Your Honor. Hmm. No, I don't recall. So the bottom line is that the only thing that the board was relying upon was this one sentence that talked about a signal. A signal is not an input. Inputs and signals are two different things. If it's not lexicography, right, then it opens up to the whole specification. And the whole specification, when you look at the specification, specifically states... Every diagram, every embodiment specifically states that this is how it works. It has to have an independent control input. And if I could point, Your Honors, to... I would like to point, Your Honors, to Appendix 1430. And this is page 46 of our opening brief. And there's a diagram there. It looks like this. And so I think this is... This kind of explains the point of why this typical language is not about inputs. And it's not saying that that language doesn't preclude that you could have an independent control input, which is what the board argued and the board held. And so I'm going to read the language. And it's Figure 28A. It has a pink box around it. And I'm going to read the language. And I think it's helpful to see. It says, if the switch is controlled by an electronic signal, it is typically a different signal than the signals connected to either terminal of the switch. Well, that's 28A. That's what it shows. You see there's a blue input coming on an input. There's a green output going on the output. And there's another red input coming in. So there is an independent control input. So that's the typical case, 28A. If you look at 28C and 28D on the same page, Your Honor, what you see is a different configuration. And you see an input. You see an output. And you still see, on the output, there's two signals on the output, right? So I guess you would call this the atypical situation. But there's two signals on the output. So it doesn't fall into the typical situation. So let's call it the atypical situation. You still have an independent control input. You still have that red line in Figure 28C of our brief, page 46. And you still have that red line, 1604, coming in. That's an independent control input. All embodiments have independent control inputs. It's not a preferred embodiment. It is the only embodiment. So that's it with regards to independent control inputs and why the board got it wrong. Because they looked at a single sentence. And that sentence is not lexicography, not is, not it means, it refers to. It's talking about control. And therefore, it opens it up to the whole specification. And when you look at the whole specification, this is what the Florida court did. When they came up with their construction, they looked at this very passage about typical. They said they looked at the passage. They said, we see it says typical. And then they went to the rest of the specification. And they said, when we look at everything, the district court in Florida, they said, we see it to have an independent control input. And that's where the definition originally came from. And then the district court in Texas said the same thing. But the court in Florida also looked at the same exact thing. And apparently, they didn't find lexicography either, because they opened it up to the entire specification. And that's why the switch, in this particular case, is an electronic device that is dictated by an independent control input, the opening and closing of a circuit. If I may, if, Honor, if you have any additional questions, or I'll move on to my first point. Thank you, Your Honors. So I think an important point that I want to point out to Your Honor is, even under the PTAB's control, even if you take the construction of a switch as an electronic device for opening and closing a circuit, Downey and Cedra combined together does not disclose that. And I think the PTAB overlooked what was going on. So if you could turn to page 48 of the brief, and I would like to talk about this diagram. It has a brown triangle and a brown line around it. And it's an important diagram, because Downey itself explains what that configuration is. It tells you exactly what that is. And it says it's not a switch. It's a configuration that is always on. It's never going on and off. And so if you look at, and this is also in our patent owner response, at appendix 2381. And so what you can see in this, this is figure 2C of Downey. And figure 2, again, page 48 of the brief. In figure 2C, what we can see is a brown triangle. And we see what's called a feedback line. That feedback line causes that whatever is in that brown triangle to stay on. It's specifically designed to stay on. And our expert does talk about that. And so we talk about it in appendix 2352. And it's Dr. Stier's declaration at appendix 2598 at, sorry, that's the wrong site. Sorry, it's appendix 2632 at paragraph 198. And what he said is, he said that always stays on. And how did he know that? Because he went into Downey, and Downey said what that little triangle was. Downey specifically said at appendix 448, which is the Downey patent, column 5, line 21, he said that inverter is a specific part number. He said that is a specific part. It's a Fairchild semiconductor part. Look at that. So that's what Dr. Stier did. He looked at that. He went to look at what they were disclosing. Counsel, you're into your rebuttal time. You can continue. Yeah, that's fine, Your Honor. I'll take it as you wish. I'm going to continue, if I could, Your Honor. And so what did Dr. Stier do? He looked at appendix 2550 to 53. And what did he find? He found what Downey talked about. So this is on appendix 2550. So Downey, this is a diagram. And what does it say? It says, in this configuration, so if you see on the top right there, you see the configuration. It has the feedback line. Here's figure 2C, feedback line, right? Brown triangle feedback line. And that's a very important configuration, because what does this appendix 2550 say? It says it's acting in a linear mode of operation, a linear mode of operation. That configuration is a linear mode of operation. You can't just look at the triangle, which is what the Patent Office did and what the petitioners did. They just looked at that triangle. You can't do that. You've got to look at the whole circuit. And so when you look at the whole circuit, Downey says that it's a linear amplifier. So what is a linear? It's an amplifier that's operating in a linear mode. I apologize. And so what does that mean? Well, let's look at what the petitioners pointed to. If you look at APPX3119, what does it say? It says a linear amplifier. For a linear amplifier, it says transistor operation lies somewhere between being fully on and fully off, meaning it's on all the time. So that specific configuration is always on, never off. And like I said, Dr. Steer, Appendix 2632, Paragraph 198. And he cited this very document, APPX2550-53. And so what did they do? They said, well, put SETRA in there. Put SETRA in because it shows a switch. So they say SETRA shows a little triangle. And Downey discloses a little triangle. So they said, put a switch in there. But if you put the switch in there, all that does is it causes a switch to always stay closed. That bypass, you can't ignore that. Sorry, it's a feedback line. No one disputed that SETRA is a switch. No, SETRA is configured as a switch. You don't dispute that today. Correct, SETRA is configured as a switch. But if you put a switch in something that's meant to keep it on all the time, meaning that it's closed all the time, it doesn't operate as a switch. So if you take a switch and you close it all the time, it stays closed, which means that that circuit that they're always on, it never shuts off, ever. And Dr. Steer explained that, and I explained that to you. And the problem is, if you use it as a switch. Counsel, you've elected to use up your time. I just want to make sure you understand that you won't have any rebuttal time. OK, I'll have some rebuttal time, Your Honor. OK, thank you. Mr. Foreman. Thank you. Thank you, and may it please the Court. This case really has two discrete issues. One, dealing with claim construction on the second switch limitation. And the other, a factual dispute about the first and third switch limitations. I'll start with the factual dispute, because that was what opposing counsel just ended with. You know, we can sit here all day and debate about what Downey shows and whether this feedback loop means the switch is always on. But that's not what this court is here to do. The court is not here to reweigh the evidence. The board looked at the evidence on both sides, including the expert testimony on both sides, and found Intel's evidence more persuasive and found Intel's expert more credible. And so, having considered all of the evidence that Parker Vision is talking about now, the board resolved that factual dispute. And like I said, this court gives broad deference to the board's weighing of the evidence. And Parker Vision is asking for you to reweigh the evidence on appeal. And that's simply not the job of this court. On the second issue, the claim constructed Intel's expert say about Downey and the argument that this item is always on. Yes, so in the expert's initial declaration, he pointed to the inverter in Downey and said that's the first switch. And then in the Parker Vision's expert offered the opinion that no, that's an amplifier that's always on. And then in the reply declaration from Intel's expert, he explained that it's not this either or. It can be a switching amplifier. And Downey describes the inverter as a nonlinear amplifier. And the expert explained why that indicates that it's a switch and can turn on and off. So yes, there was competing expert testimony on this highly technical factual issue. And the board chose to found Intel's evidence more persuasive. On the claim construction issue, Parker Vision is really trying to minimize this one sentence in the specification that they keep saying. But it's in a section called terminology, which is you don't always see sections like this in patents where the patentee is coming out and giving you essentially a glossary of terms that are going to be used in the specification. And minimizing this as one sentence really ignores that fact. And if you look at that definition, it says that if a switch is controlled by an electronic signal, it is typically a different signal than the signals connected to either terminal of the switch. And we know that typically means usually, but not always. And so a simple grammatical reading of this shows that that can't be a hard and fast requirement of a switch. The fact that all of the embodiments may show an independent control input can't change that. This court has said on many occasions that even if all embodiments show a specific configuration or a specific limitation, that's not a reason to limit the claims. And so if you look at the claim language, there's nothing in the claim language to point to their construction. And the fact that the embodiments show the independent control input is simply not enough, given this expressed definition in the specification. Lastly, I'd just like to mention the district court constructions, which opposing counsel brought up. There were courts in Texas and Florida that construed switch and adopted Parker Vision's construction. The board was obligated to consider those constructions, which it did. The problem with the constructions is neither court really provided any explanation or analysis of why they adopted those constructions. So they're really not particularly helpful to this case or this court in showing why Parker Vision's construction should be adopted. Are there no further questions? Apparently not. Thank you, Mr. Foreman. Thank you. Mr. Charco, as mentioned, you chose to use your time. But we'll give you a minute for rebuttal. So going back to the point I was making with putting Cedra into that triangle, if you put Cedra into that triangle, it stays on all the time. It's operating as an amplifier. You can't change its condition. So regardless of what you put in that little box, it's an amplifier. And Downey specifically said it has to operate as an amplifier. Now, if you make Cedra, if you say it's a switch and it opens and closes, if you're saying that you put it in there and it's operating as a switch, well, it won't work. And we have appendix 2631, paragraph 197 of Dr. Stier's declaration or affidavit. He said it's configured as a switch, is unsuitable or would not work to the intended purpose as an amplifier if it was a switch, if it was opening and closing, he specifically says. And then appendix 2609, paragraph 151, you have to have gain. And then the other thing, Your Honor, with regards to plain construction, it's about Phillips. And we're construing, and it's Phillips. And the section talking about definition or terminology, he did not point to one thing which said switch means this. He said he's pointing to a section that has nothing to do with what a switch means. Thank you, Your Honor. Thank you, counsel. We'll take the case for unsubmission.